NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASSE INTERNATIONAL, INC., | No. 18-55979 |
| Plaintiff-Appellant, | D.C. No. 8:14-cv-00534-CJC-JPR |
| v. | |
| MICHAEL POMPEO, Secretary of State of the United States; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted January 10, 2020
Pasadena, California

Before: WATFORD and BENNETT, Circuit Judges, and RAKOFF,** District
Judge.

ASSE International, Inc. argues that the Department of State (the

Department) violated the Administrative Procedure Act (APA) and regulations

implementing the United States Exchange Visitor Program (EVP) when it

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

sanctioned ASSE for conduct involving one of ASSE's exchange visitors, Noriko Amari.  We reverse on the basis of the APA violation and remand.

**1.**  The Department's decision to sanction ASSE was arbitrary and capricious in one critical respect.  The Department sanctioned ASSE based in part on the agency's finding that ASSE committed acts of omission or commission which had or could have had the effect of endangering Amari's health, safety, or welfare.  The Department based that finding, in part, on the decision by the Department of Homeland Security (DHS) to grant Amari a T visa, a form of relief available to individuals who have been subjected to human trafficking.  *See* 8 U.S.C. § 1101(a)(15)(T)(i)(I); 22 U.S.C. § 7102(11)(B).  But the Department's own Bureau of Diplomatic Security conducted a six-month investigation of the circumstances surrounding Amari's participation in the EVP, which included at least one in-person interview with Amari.  The Bureau of Diplomatic Security concluded that she had *not* been subjected to human trafficking and had instead conspired to commit visa fraud.

Given those conflicting determinations, the Department was required to offer a reasoned explanation for why it decided to credit DHS's determination over the conclusion reached by the Bureau of Diplomatic Security.  Yet the Department never received or reviewed any of the information underlying DHS's decision to grant Amari a T visa.  And by its own admission, it never "considered, directly or

indirectly, the details or results of [the Bureau of Diplomatic Security]'s visa fraud investigation or evidence pertaining to that investigation." As a result, the Department had no basis for concluding that DHS's determination was more reliable than the conclusion reached by the Bureau of Diplomatic Security and accordingly should be given greater weight. The Department's failure to address in any respect the results of the Bureau of Diplomatic Security's investigation violated the agency's duty under the APA to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted); *see* 5 U.S.C. § 706(2)(A).

We cannot be sure that the Department's violation of the APA was harmless. *See Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1092 (9th Cir. 2011). Although the Department found multiple regulatory violations, it expressly based its sanction "upon the fact that DHS considers Ms. Amari to have shown sufficient evidence of human trafficking while participating in ASSE's exchange visitor program." We have no way of knowing whether the agency would have imposed the same sanction against ASSE based solely on the remaining violations it found. Given that the human trafficking violation represented the most serious allegation of misconduct, we think the most prudent course is to remand this matter

to the agency so that it may decide whether to maintain the sanction it has imposed against ASSE.

**2.** The plain language of 22 C.F.R. § 62.22(g) forecloses ASSE's argument that a sponsor may not be held strictly liable for regulatory violations committed by third parties with whom it partners. Section 62.22(g)(1) allows sponsors like ASSE to engage third parties "to assist them in the conduct of their designated training and internship programs." But it expressly provides that "[a] sponsor's use of a third party does not relieve the sponsor of its obligations to comply with and to ensure third party compliance with Exchange Visitor Program regulations." To enforce that command, the provision further provides that "[a]ny failure by any third party to comply with the regulations set forth in this Part . . . will be imputed to the sponsors engaging such third party." By virtue of this imputation rule, any violations committed by third parties for whom a sponsor like ASSE is responsible are deemed to be the sponsor's own violations, and thus may form the basis for sanctions imposed against the sponsor under 22 C.F.R. § 62.50.[1]

We reverse the district court's order granting summary judgment to defendants and remand with instructions to remand the matter to the agency for further consideration consistent with this disposition.

---

[1] In light of our disposition above, we need not address ASSE's argument that the Department improperly imputed to ASSE regulatory violations concerning the trafficking of Amari committed by third parties for whom it was not responsible.

**REVERSED and REMANDED.**